```
              UNITED STATES DISTRICT COURT
                        FOR THE
              MIDDLE DISTRICT OF PENNSYLVANIA


KIM ANN BLANK,                  :
                                :
        Plaintiff               :   No. 4:08-CV-1222
                                :
   vs.                          :   (Complaint Filed 6/27/08)
                                :
MICHAEL J. ASTRUE,              :
COMMISSIONER OF SOCIAL          :   (Judge Muir)
SECURITY,                       :
                                :
        Defendant               :
```

**ORDER**
February 11, 2009

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Kim Ann Blank's claim for social security disability insurance benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and is "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." The parties are in agreement that December 31, 1997, was the date that Blank was last insured. In order to establish entitlement to disability insurance benefits Blank must establish a disability on or before that date. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a)(2008); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Blank, who was born on February 15, 1962, claims that she became disabled on June 1, 1987, because of a 100% hearing loss in the right ear, a 30% hearing loss in the left ear, severe arthritis in the knees and chronic back problems. Tr. 27, 43, 100 and 103.[1] At the time of the onset of her alleged disability, Blank was employed 40 hours per week as a cook at a nursing home. Tr. 44, 80 and 104. After working at the nursing home, Blank was employed as a cook at a grocery store. Tr. 80 and 104. Blank stopped working on January 6, 1993. Tr. 104.

On August 19, 2005, Blank protectively filed an application for disability insurance benefits. Tr. 40-42 and 100.[2] After her claim was denied initially, a hearing was held on September 25, 2007, before an administrative law judge. Tr. 216-226. On January 16, 2008, the administrative law judge issued a decision denying Blank's application for benefits. Tr. 13-18. Blank filed a request for review of the decision with the Appeals Council of the Social Security Administration. Tr. 7. On May 2, 2008, the Appeals Council concluded that there was no basis upon which to grant Blank's request for review. Tr. 4-6. Thus, the

---

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on September 3, 2008.

2. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

administrative law judge's decision stood as the final decision of the Commissioner.

On June 27, 2008, Blank filed a complaint in this court requesting that we reverse the decision of the Commissioner denying her disability benefits. The Clerk of Court assigned responsibility for this case to the undersigned but referred it to Magistrate Judge Mannion for preliminary consideration. On June 14, 2008, we retrieved the file for disposition in chambers without reference to Magistrate Judge Mannion.

The Commissioner filed an answer to the complaint and a copy of the administrative record on September 3, 2008. After being granted an extension of time, Blank filed her brief on December 16, 2008, and the Commissioner filed his brief on January 20, 2009. The appeal[3] became ripe for disposition on February 6, 2009, when Blank elected not to file a reply brief.

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is

---

3. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight

of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which
> he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for
> work.  For purposes of the preceding sentence (with
> respect to any individual), "work which exists in the
> national economy" means work which exists in significant
> numbers either in the region where such individual
> lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance claims.  See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[4] (2) has an impairment that is severe or a combination of impairments that is severe,[5] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[6] (4) has the residual

---

4.  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

5.  If the claimant does not have a severe impairment or combination of impairments, the claimant is not disabled and the sequential evaluation proceeds no further.

6.  If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the
(continued...)

functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.  As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[7]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996).  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

In this case the administrative law judge at step one found that Blank had engaged in substantial gainful activity from her alleged onset date of June 1, 1987,[8] through 1992.  However,

---

6.  (...continued)
claimant is disabled.  If not, the sequential evaluation process proceeds to the next step.

7.  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

8.  Counsel for Blank argues that Blank amended her alleged onset date to December 31, 1995, based on Exhibit 1E located at page 48 of the administrative record.  This contention is a mischaracterization of Exhibit 1E.  Blank originally filed an application for disability benefits on December 23, 1996.  Tr. 37-39.  In that application, Plaintiff alleged an onset date of December 30, 1995.  A disability report (Exhibit 1E) completed by B. Luther, an interviewer with the Social Security

(continued...)

the administrative law judge found that Blank has not engaged in substantial gainful activity since January, 1993.  Tr. 15.

At step two, the administrative law judge found that Blank had the following medically determinable impairments: reduced hearing worse on right than left with history of frequent ear infections and left knee strain with history of arthroscopic surgery.  The administrative law judge, however, found that Blank did not have an impairment or combination of impairments that was severe. Tr. 15.

An impairment or combination of impairments is "severe" within the meaning of the social security regulations if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. § 404.1521; Barnhart v. Thomas, 540 U.S. 20, 24 (2003); Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir.

---

8.  (...continued)
Administration, states as follows: "Clmt did not stop wk in 1992 because of her disability.  When I talked to her on the phone she said use 12/31/95 onset."  Tr. 48.  The disability report, including the notation, written by B. Luther which counsel for Blank contends shows an amendment of the alleged onset date does not relate to the present application under review.  Blank's 1996 application for disability insurance benefits was denied on March 18, 1997, at the initial level of review and Blank did not request a hearing before an administrative law judge or pursue any further administrative remedies. Tr. 25 and 28-30.  Although the issue has not been raised or argued by Defendant, the prior denial of benefits with no pursuit of administrative or judicial remedies raises the question of whether Blank is precluded from arguing that she was disabled prior to March 18, 1997.  However, we need not rule on that issue because the decision of the administrative law judge with respect to the present case as will be explained *infra* is supported by substantial evidence.

2004). The Social Security regulations described "basic work activities" as follows:

> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include-
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521.

The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520©, 416.920©. If a claimant has no impairment or combination of impairments which significantly limit the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. <u>Id.</u> If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g). In the present case the administrative law judge found that Blank was not disabled at the second step of the sequential evaluation process.

We have thoroughly reviewed the administrative record and for the reasons outlined below have concluded that the decision of the administrative law judge is supported by substantial evidence.

The administrative record reveals social security earnings in the years 1978 through 1992. Tr. 44.  Starting with 1987, the year in which Blank claims she became disabled, Blank earned $11562.08.  In 1988 Blank earned $13412.34, in 1989 $12778.97, in 1990 $15574.85, in 1991 $18652.95, in 1992 $7148.35 and in 1993 $144.00.  Tr. 44. Blank has not challenged the administrative law judge's finding that she engaged in substantial gainful activity from the alleged onset of her disability (June 1, 1987) through December, 1992.

Blank worked as a supervisory cook until January, 1993. Tr. 104.  In documents filed with the Social Security Administration, Blank explained why she stopped working as follows: "we moved to a different area where my husband could work and I did not have to because I could not give an employer enough hours and the amount of work needed because of my knees." (sic) Tr. 104.

Blank acted as the primary caretaker of her two sons, both of whom were born during her alleged period of disability. Tr. 40-41 and 111.  Significantly, one of Blank's son's was diabetic and required additional attention. Tr. 111. Also, Blank reported that even when her pain increased significantly in 2001,

well after her date last insured, she continued to drive, prepare meals, use the vacuum, go grocery shopping, and carry up to three grocery bags at once. Tr. 112 and 114.

The bulk of the medical records contained within the administrative record relate to Blank's contact with medical providers well after December 31, 1997. Tr. 148-150, 157-159, 164, 175-195, 197-198 and 203-215. Because Blank has to prove that she was suffering from a disability on or before December 31, 1997, the records of contact with medical providers after that date have limited relevance to the issue of whether Blank was suffering from a disability on or before December 31, 1997. Of particular importance is the fact that no medical provider who actually treated or evaluated Blank on or before December 31, 1997, has stated that Blank was suffering from a severe medically determinable impairment on or before that date and treatment notes from that time frame do not reveal a severe medically determinable impairment or combination of impairments which lasted a continuous period of 12 months.

The administrative record does not reveal that Blank underwent significant medical treatment from the alleged disability onset date (June 1, 1987) through December 31, 1997, the date last insured.

Medical treatment notes from October, 1985, through October, 1987, reveal that Blank suffered from several ear infections (acute otitis) and was treated with an antibiotic

11

(Augmentin). Tr. 136-139. An x-ray of Blank's paranasal sinuses on September 25, 1987, revealed no abnormalities. Tr. 141.

The administrative record reveals that Blank had hearing problems since her early childhood but she did not use or require a hearing aid to function. Tr. 158. Hearing examinations conducted after December 31, 1997, revealed that Blank's speech was easily understood and that she functioned well in conversation provided there was no significant background noise. Tr. 158 and 166.

The administrative record further shows that Blank injured her knee in January 1992 when she slipped on a patch of ice. Tr. 200. Although an x-ray revealed evidence of hypertrophic[9] alterations of the knee joint, which had been there since at least 1987, there was no evidence of fractures or joint space narrowing. Tr. 202. There was also no evidence of any follow-up treatment for her left knee during the period at issue.

Significantly, Blank continued to work after her ear and respiratory infections in 1986 and 1987 and after injuring her knee in 1992. These problems did not prevent her from engaging in substantial gainful employment. Tr. 104.

Blank reported that her condition worsened in 2001, well after the relevant period. Tr. 114. Nevertheless, an examination by William O. Bauman, D.O., on June 4, 2002, revealed that even in

---

9. Hypertrophy is the enlargement or overgrowth of an organ or body part because of increased size of the constituent cells.

her worsened condition, Blank retained normal reflexes, sensation, and motor strength in the lower extremities.  Tr. 205.  Similarly, when Blank was examined by Han Suk Koh, M.D., a neurologist, on April 10, 2003, Blank had normal range of motion, no muscle atrophy, normal muscle strength, normal tandem walking, no sensory deficits, and intact coordination and cerebellar functions.  Tr. 204.   Specifically, Dr. Koh's report of the physical examination of Blank states in toto as follows:

> She is 5 feet 9 inches, 285 pounds.  The patient is alert, oriented, and cooperative.  Speech is fluent.  Tongue is in the midline with a symmetric pharynx.  Visual fields are full.  No nystagmus noted.  Extraocular movements are intact.  The rest of the cranial nerve examination is unremarkable.  No aphasia.  No dysarthria.  Neck is supple. No limitation in range of motion noted.  Fine finger and alternating movements of the bilateral upper extremities are within normal limits.  There is some tenderness on palpation of the right-sided sacroiliac region.  However, there is no skin changes or muscle atrophy noted on inspection.  Individual muscle strength testing proximally and distally in both upper and lower extremities is within normal limits.  Muscle stretcher reflexes are 2+ and symmetric bilaterally.  However, I could not elicit good knee jerks bilaterally.  It is most likely related to the patient's knee replacement surgery. However, I could elicit very nice ankle jerks on both sides. Both toes are going down.  The patient is able to step on toes and heels without significant difficulties.  Tandem walking is perfect.  Romberg test is negative.  Left straight leg raising testing did not reveal any evidence of sciatic nerve irritation.  Also, Patrick maneuver is negative on both sides.  Coordination and cerebellar functions are grossly intact.  Sensory testing also did not reveal any significant deficits.

Tr. 204.

On April 18, 2007, Blank was evaluated by James E. Williams, Ph.D., a psychologist. Tr. 165-170.  Dr. Williams

13

performed a clinical psychological disability evaluation and an assessment of Blank's intellectual functioning.  Tr. 165.  Dr. Williams stated that Blank had appropriate speech, no perceptual disturbances, adequate stream of thought, and good memory skills. Tr. 167.  Although IQ testing indicated that Blank had a mental IQ of 70, a performance IQ of 70 and a full scale IQ of 67, Dr. Williams impression was as follows:

> IMPRESSION:
>
> AXIS I:    Tobaccoism.[10]
>
> AXIS II:   Cognitive challenge, NOS.[11]  Early medical records if available should be reviewed in order to determine the possibility of early auditory challenge, limiting which would suppress her TRUE IQ scores.  A report from 9-4-86 indicates tinnitus and other possible difficulties.
>
> AXIS III:  Refer to medical records.

Tr. 168.  In answering an assessment of mental functioning questionnaire, Dr. Williams found that Blank was markedly impaired in only one area of functioning, i.e., her ability to carry out detailed instructions. Tr. 171.

---

10. On March 19, 2007, Blank was smoking one pack of cigarettes per day.  Tr. 148.  As of that date she had been smoking for approximately 30 years.  Tr. 203.

11. "NOS" is an abbreviation for not otherwise specified.

At the hearing before the administrative law judge on September 25, 2007, John Menio, M.D., testified as a medical expert. Tr. 35-36 and 221-223. Dr. Menio testified that Blank did not have an impairment or combination of impairments on or prior to December 31, 1997, which met a listed impairment. Dr. Menio further testified that as of December 31, 2007, Blank could perform "all activity." Tr. 224.

Blank argues that the administrative law judge substituted his own opinion for that of Blank's treating physicians, failed to consider whether Blank met Listing 12.05, subsection C, for mental retardation, and failed to assist Blank in developing a full and fair record. We will now review those arguments in that order.

None of Blank's treating physicians indicated that she was disabled on or before December 31, 1997. Furthermore, as stated above, Dr. Menio, a medical expert, testified during the administrative hearing that Blank could perform "all activity." Tr. 224. The relevant medical evidence shows only that Blank had hearing problems since childhood, was treated for ear infections and upper respiratory infections in 1986 and 1987, and injured her knee when she fell on ice in January of 1992, impairments which did not preclude her from working during the relevant time period. The fact that Blank was able to work with these impairments supports the administrative law judge's finding that Blank was not disabled under the Social Security Act. See Jones v. Sullivan,

954 F.2d 125, 129 (3d Cir. 1991)(affirming the decision of the administrative law judge who "placed great weight on the fact that most of [claimaint's] ailments date back many years and yet did not prevent him from maintaining employment as a security guard"); Craig v. Chater, 76 F.3d 585, 596 n.7 (4th Cir. 1996)(noting that because the claimant worked with the same impairments she alleged rendered her unable to work, "she cannot now, as a matter of law, be found disabled without a claim of significant deterioration of her condition"). Blank admitted that her condition did not worsen until 2001, well after her insured status expired. Tr. 114. The administrative law judge did not substitute his own opinions for those of Blank's treating physicians and any such claim by Blank is devoid of merit.

Blank's second argument, i.e., she met subsection C of Listing 12.05 for mental retardation, is likewise without merit. Listing 12.05, subsection C, states as follows:

> Mental retardation. Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in . . .[subsection] C . . . are satisfied.
>
> \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

The general introduction to the mental health listings provides that an individual meets the listing for mental retardation when the individual satisfies both "the diagnostic description in the introductory paragraph and any one of the four sets of criteria" of the Listing 12.05. 20 c.f.R. pt. 404, subpt. P, app. 1, § 12.00A. The diagnostic description in the introductory paragraph of 12.05 requires mental retardation characterized by "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." In order to meet Listing 12.05, subsection C, Blank had to show that she (1) met the diagnostic description in the introductory paragraph, (2) had a valid IQ score of 70 or below, and (3) had a physical or other mental impairment imposing an additional and significant work-related limitation of function. In this case, Blank did not meet the mental retardation listing because she did not meet the required criteria in the diagnostic description of the listing of deficits in adaptive functioning initially manifested before age 22.

The record contains no mention of a diagnosis of mental retardation. Blank does not have significant deficits in adaptive functioning. "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and

community setting." Diagnostic and Statistical Manual for Mental Disorders, 42 (4th ed., text rev., 2000)(DSM-IV-TR). Blank was the primary caregiver of her two children, one of whom was diabetic. Tr. 112. Blank also worked for several years as a cook with supervisory responsibilities. Tr. 105. Blank's ability to care for two children, one with special needs, and to perform supervisory work demonstrates that Blank was not mentally retarded. Furthermore, Dr. Williams did not diagnose mental retardation despite Blank's IQ scores. Dr. Williams noted that there was "no indication of work related challenges" during his examination of Blank. Tr. 166.

Blank's third argument is that the administrative law judge did not properly develop the record. An administrative law judge has an affirmative obligation to develop the record. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)("The ALJ has an obligation to develop the record in light of the non-adversarial nature of benefits proceedings, regardless of whether the claimant is represented by counsel."); Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); Fraction v. Bowen, 787 F.2d 451, 454 (8th Cir. 1986); Reed v. Massanari, 270 F.3d 838, 841 (9th Cir. 2001); Smith v. Apfel, 231 F.3d 433. 437 (7th Cir. 2000); see also Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 2085 (2000)("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]"). If the record is not

adequately developed, remand for further proceedings is appropriate.  <u>Id.</u>

In this case we are satisfied that the administrative law judge complied with his affirmative obligation to develop the record.  Specifically, the administrative law judge obtained Blank's medical records for the relevant period.  Tr. 136-46 and 200-202.  In addition, because Blank had limited medical treatment notes from the relevant period, the administrative law judge obtained reports from consultative medical sources.  Tr. 148-63 and 165-172.  Moreover, the administrative law judge obtained the services of a medical expert, Dr. Menio, who reviewed the evidence of record, questioned Blank about her condition, and then offered an opinion about her ability to perform work-related functions during the period at issue.  Also, after the hearing the administrative law judge granted Blank additional time to supplement the record with further evidence and, significantly, Blank's current counsel has failed to proffer or produce any additional evidence of Blank's condition during the period at issue.

Our review of the administrative record reveals that the decision of the administrative law judge is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner denying Blank social security disability insurance benefits.

NOW, THEREFORE, IT IS ORDERED THAT:

1. The Clerk of Court shall enter judgment in favor of the Commissioner and against Kim Ann Blank as set forth in the following paragraph.

2. The decision of the Commissioner denying Kim Ann Blank social security disability insurance benefits is affirmed.

3. The Clerk of Court shall close this case.

                              s/Malcolm Muir
                              MUIR
                              United States District Judge

MM:gs